1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NINTENDO OF AMERICA INC.,

Plaintiff,

v.

GARY BOWSER,

Defendant.

NO.

COMPLAINT

JURY DEMAND

## PRELIMINARY STATEMENT

Plaintiff Nintendo of America Inc., by and through its counsel, on personal knowledge as to its own actions and on information and belief as to the actions, capabilities, and motivations of others, hereby alleges as follows:

1.     Nintendo of America Inc., a wholly-owned subsidiary of Nintendo Co., Ltd., markets and distributes electronic video game consoles, games, and accessories developed by Nintendo Co., Ltd., including the Nintendo Switch and the Nintendo Switch Lite consoles (collectively the "Nintendo Switch"), as well as the proprietary and copyrighted software that serves as the Nintendo Switch's operating system.  Collectively, Nintendo of America Inc. and

COMPLAINT - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Nintendo Co., Ltd. are referred to herein as "Nintendo."  Nintendo also makes award-winning video games that can be played on the Nintendo Switch.  To protect its intellectual property rights, and to ensure that only authorized and licensed Nintendo Switch games can be played on the Nintendo Switch, Nintendo designed the Nintendo Switch with sophisticated security features meant to prevent unauthorized operating systems from being used on the Nintendo Switch, and to prevent pirated video games from being played on the Nintendo Switch.  The Nintendo Switch is one of the most popular video game consoles of all time.

2. Defendant Gary Bowser is one of the leaders of Team Xecuter, a pirate operation that unlawfully manufactures and traffics in an unauthorized operating system called the "SX OS," and accompanying piracy tools which install it (the "Circumvention Devices"), for commercial gain.  The purpose of the Circumvention Devices and the SX OS—developed, manufactured, and trafficked under Defendant's leadership—is to hijack the Nintendo Switch by interrupting and bypassing its technological security features and protections.  This thereby allows the Nintendo Switch to be used for massive intellectual property theft and infringement.

3. The Circumvention Devices strip away or circumvent technological protection measures Nintendo put into place to protect its invaluable copyrighted software and video games from unauthorized access and copying (the "Technological Measures").

4. Once this circumvention has occurred, the SX OS is able to run on the Nintendo Switch, modifying the authentic, authorized Nintendo Switch operating system, thus allowing users to bypass the Technological Measures to obtain and play virtually any pirated game made for the Nintendo Switch, all without paying anything to Nintendo or to any of the large number of other game developers and publishers making and selling games for the Nintendo Switch.  For example, users can find pirated Nintendo Switch games online, transfer unauthorized copies to a

COMPLAINT - 2

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

memory card, insert that card into the Nintendo Switch, and then, with the SX OS running, play those infringing games on the hacked Nintendo Switch for free.  If a user already owns a *lawful*, properly-purchased Nintendo Switch game, the user can use the SX OS and accompanying features to turn that game into an *unlawful* copy, which allows the user to share additional unauthorized copies with more users also using the SX OS on the Nintendo Switch.

5.     Defendant has been one of only a handful of key members of Team Xecuter, running the day-to-day operations of the hacking group, including: operating websites that traffic in the Circumvention Devices and SX OS; trafficking in the devices through other distribution channels, including multiple resellers; leading the marketing of the products and websites, including overseeing advertisements on the group's websites and managing income from ad sales; and overseeing and/or liaising among Team Xecuter's other key players, including distribution and manufacturing centers abroad, forum moderators, individual users, and resellers selling the Circumvention Devices, including in the United States and in this District, several of whom have already been adjudicated as having engaged in unlawful activity by two federal courts.  Indeed, Defendant has been reported to be "the closest thing to a public face for the team of coders and foreign manufacturers that made up the [Team Xecuter] supply chain."

6.     As part of his leadership, Defendant has operated at least four websites—TEAM-XECUTER.COM, XECUTER.ROCKS, TEAM-XECUTER.ROCKS, and, upon information and belief, SX.XECUTER.COM (the "Websites")—through which he has unlawfully trafficked in, promoted, and marketed the SX OS and Circumvention Devices.  Defendant also created and ran the website MAXCONSOLE.COM, which served as a central location for Defendant to post reviews, advertisements (including from resellers), and support forums for the Circumvention Devices and the resellers selling those Devices.  Defendant has also provided material support to

COMPLAINT - 3

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

reseller websites through which Circumvention Devices have been trafficked, including in this District, and has also operated a number of accounts at blogs, forums, and other online news outlets, typically under the alias "Gary Opa" or "GaryOPA," which is sometimes displayed along with Defendant's real name, as in: "Gary Bowser (garyopa)." Defendant will often take the content that he has posted on the Team Xecuter Websites under the name Team Xecuter, and post the same content to his own site and third-party sites under the alias GaryOPA, showing that he is the illegal operation's front man, and demonstrating that he frequently had control over the content of the Websites.

7.      Defendant has been a leader in the hacking and piracy community targeting Nintendo's intellectual property more broadly for many years.  Defendant has trafficked in circumvention devices and helped facilitate infringement of Nintendo video games not only on the Nintendo Switch, but also on earlier consoles, including the Nintendo DS, released in 2004, the Wii, released in 2006, and the Nintendo 3DS, released in 2011.

8.      Defendant is also known to law enforcement.  Defendant was charged in Canada in 2008 in connection with his elaborate operation involving counterfeit Nintendo video games and the modification of video game consoles.  And late last year, Defendant was indicted by the United States Attorney's Office for the Western District of Washington for, *inter alia*, trafficking in circumvention devices, the vast majority of which target Nintendo consoles, and which include the devices at issue here.  The indictment in *United States v. Louarn et al.*, No. 2:20-cr-00127-RSL (the "Indictment"), alleges that Defendant, along with two other individuals—Max Louarn and Yuanning Chen—ran a criminal enterprise under the name Team Xecuter, which "developed, manufactured, marketed, and sold a wide variety of circumvention devices . . . designed . . . primarily to circumvent technological measures in a manner that allowed users to play pirated

COMPLAINT - 4

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

versions of copyrighted videogames . . . ."  The indictment notes that the enterprise specifically designed the devices "to circumvent the technological measures in . . . Nintendo Switch consoles."

9.      Under the joint leadership, direction, and control of Defendant, Chen, and Louarn, Team Xecuter has grown into an international pirate ring, manufacturing and trafficking in unlawful Circumvention Devices and operating systems on a massive scale in this District and around the globe.  On information and belief, Defendant has trafficked in many thousands of Circumvention Devices and downloads of the SX OS throughout the United States, including in this District.

10.      Indeed, Team Xecuter's unlawful SX OS is the most-installed piracy software on the Nintendo Switch.  At one point, the SX OS was pre-installed on 89% of modded/hacked Nintendo Switch products available for illegal sale.

11.      Defendant's unlawful conduct has caused Nintendo and all those third parties that develop games for the Nintendo Switch platform tremendous harm.  Nintendo's copyrighted games are at the heart of its popularity, and Nintendo's business necessarily relies upon the authorized and licensed sale of authentic copies of the video games, and upon the trust of third-party game developers that the games they develop will be secure on Nintendo's consoles and will not be illegally distributed or played.

12.      This is exactly why Nintendo has invested and continues to invest in Technological Measures to secure its consoles and protect against unauthorized access to and infringement of copyrighted games developed by Nintendo and thousands of third-party developers.

13.      Recognizing the threats faced by copyright owners like Nintendo in the age of digital piracy, Congress enacted the Anti-Circumvention and Anti-Trafficking provisions of the Digital Millennium Copyright Act ("DMCA"), making it illegal to circumvent or traffic in devices

COMPLAINT - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

that circumvent technological protections put into place to protect against unlawful access to and copying of copyrighted works.

14.     Defendant's unlawful conduct falls squarely within these provisions.  The SX OS and Circumvention Devices disable the Nintendo Switch's Technological Measures—which Nintendo put in place to protect its copyrighted works from unlawful access, copying, and playing—thereby enabling, and exacerbating, widespread piracy.

15.     Defendant's importation, marketing, sale, and/or trafficking in the Circumvention Devices and the SX OS has directly injured and damaged Nintendo, infringes and threatens irreparable injury to Nintendo's intellectual property rights, and violates the anti-trafficking provisions of the DMCA, 17 U.S.C. § 1201 *et seq*., entitling Nintendo to the relief sought herein.

16.     In addition, Defendant's website TEAM-XECUTER.COM prominently displays three blog posts that contain images of the Nintendo Switch running the unauthorized operating system, including unauthorized images of Nintendo's copyrighted games being pirated using the SX OS.  These three posts—collectively displaying nine images from Nintendo's copyrighted games—violate Nintendo's exclusive right to display its audiovisual works under 17 U.S.C. § 106(5), and entitle Nintendo to the relief sought herein.

17.     Two U.S. federal courts have already ruled that the trafficking of the Circumvention Devices and of the SX OS violates the DMCA.

18.     In *Nintendo of America Inc. v. Dilts et al.*, 3:20-cv-01076 (N.D. Ohio 2020), a federal court entered a $2 million judgment and permanent injunction against a U.S.-based reseller of the Circumvention Devices working at Defendant's direction.  The court enjoined the defendants from offering for sale the same Circumvention Devices at issue here because the devices violated the anti-trafficking provisions of the DMCA, and the court, among other things,

COMPLAINT - 6

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

directed the defendants to shut down their website and Facebook group, and to destroy "all Circumvention Devices, [and] all copies of SX OS . . . ." *Dilts*, No. 3:20-cv-01076, Dkt. 16.

19.     In *Nintendo of America Inc v. ANXCHIP.COM et al.*, 2:20-cv-00738-TSZ (W.D. Wash. 2020), this Court awarded Nintendo a judgment and permanent injunction against multiple other resellers of the Circumvention Devices.  The judgment included violations of both the anti-trafficking provisions of the DMCA, arising from the selling of the Circumvention Devices, as well of the Copyright Act, 17 U.S.C. § 101 *et seq.* ("Copyright Act").

20.     Notwithstanding some of the success Nintendo has had enforcing its rights against resellers of the Circumvention Devices, Defendant has continued to thumb his nose at the law, manufacturing and trafficking in the Circumvention Devices and SX OS.  He has empowered resellers to re-emerge and launch new websites—including after the same websites had been shut down by courts and other vehicles of enforcement—and facilitated additional avenues of distribution, all forcing Nintendo into a game of whack-a-mole.  In fact, as set forth below, even as Nintendo has implemented Technological Measures aimed at addressing the unlawful Circumvention Devices, Defendant and Team Xecuter have rolled out new Circumvention Devices aimed at circumventing those newer Technological Measures.

21.     Today, the Circumvention Devices trafficked by Defendant continue to put more than 79 million Nintendo Switch and Nintendo Switch Lite consoles at risk from piracy, and Defendant has further facilitated the provision of free pirated content to users, such that the Circumvention Devices appear economical to the willing consumer.

22.     The harm to Nintendo is manifest and irreparable.

COMPLAINT - 7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

**NATURE OF THE ACTION**

23.     This is a civil action seeking equitable relief and damages for unlawful trafficking in circumvention devices in violation of the DMCA, 17 U.S.C. § 1201 *et seq.*, and for unlawful display of protected works in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

**JURISDICTION AND VENUE**

24.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 106, 501, 1201, & 1203.

25.     Defendant is subject to the jurisdiction of this Court pursuant to Washington Revised Code § 4.28.185 and Federal Rule of Civil Procedure ("Rule") 4(k)(1) because he transacted business in the State of Washington and in this District and has specifically marketed, offered to the public, and otherwise trafficked in the Circumvention Devices and the SX OS in the United States and in this District.  On information and belief, Defendant purposefully directed his activities into this District and to residents of this District, including by directing the consummation of online transactions with residents of this District on the Websites, facilitating the shipment of Circumvention Devices into this District, and in so doing, availing himself of the privilege of conducting business in this District.  Nintendo's claims arise out of and relate to Defendant's activities in this District.  Between June 1, 2018 and January 15, 2021, the State of Washington was first in the country for Google searches for SX OS and SX Pro.

26.     Indeed, and as set forth in the Indictment, the connections to this District are strong. Specifically, Team Xecuter, under Defendant's leadership and direction, caused at least one Circumvention Device to be delivered to investigators within this District.  When those investigators installed and activated the SX OS software, the Nintendo Switch consoles

COMPLAINT - 8

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

communicated with servers both inside and outside the District—including servers operated by Nintendo—from the District.

27.     In addition, Defendant—who primarily traffics in unlawful devices designed solely for Nintendo products—expected or should have reasonably expected his acts to have consequences and cause harm in Washington, the location of Nintendo of America Inc.'s headquarters in the United States.

28.     In addition, Defendant's Websites are interactive.  They allow users to create accounts, download files—including illegal circumvention software—communicate with Team Xecuter leadership and other SX OS users, post content, and obtain SX OS license keys.  And consumers within Washington are regularly visiting and using the Websites.  Over the past year, Washington State residents have visited Defendant's Websites nearly 25,000 times, and viewed pages on the Websites over 70,000 times.  Defendant also supervised and exercised control over websites that were resellers of Team Xecuter products, who shipped Circumvention Devices throughout the U.S., including into this District.  Those sites allowed users to browse for products, write reviews of products, contact customer service, add items to a cart, purchase items, and process payments.  Defendant also engaged in back-and-forth direct communications with Team Xecuter customers—including in the U.S.—through Defendant's alias GaryOPA on various online forums.

29.     Alternatively, Defendant is subject to the jurisdiction of this Court pursuant to Rule 4(k)(2).  Nintendo's claims arise under federal law, and Defendant targets the U.S. generally. Defendant's Websites provide links to "authorized resellers" of the Circumvention Devices who are "recommended" by Defendant, including multiple resellers that ship to the U.S. and have warehouses within the U.S.  Indeed, Defendant has specifically recommended resellers based on

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

the fact that they have U.S. warehouses.  The Websites have prominently displayed ads from resellers targeting U.S. customers.  At one point, an advertisement on the left-hand side of every page on TEAM-XECUTER.COM displayed: "USA/DE Warehouse Local Shipping."  Another advertisement advertised a reseller that would accept PayPal, was the "Fastest Seller," and offered "USA/EU Shipping."

30.     Moreover, the U.S. is the country with the most visitors to TEAM-XECUTER.COM and the second most visitors to SX.XECUTER.COM.  Indeed, on information and belief, Defendant has provided his offerings to hundreds of thousands of U.S. consumers, has derived substantial revenue from interstate and international commerce, and has entered into agreements with third parties in the U.S. in furtherance of his unlawful activities.

31.     Finally, on information and belief, Defendant is currently in this District and may be served here; thus, Defendant is subject to the jurisdiction of this Court pursuant to Washington Revised Code § 4.28.080 and Rule 4(k)(1) because he will be served personally within this District.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and/or 28 U.S.C. § 1400(a) in that the Defendant is an individual subject to personal jurisdiction in this District.

## THE PARTIES

33.     Nintendo of America Inc. is a Washington corporation headquartered in Redmond, Washington.  Nintendo of America Inc. is a wholly-owned subsidiary of Nintendo Co., Ltd., a Japanese company headquartered in Kyoto, Japan.  Nintendo of America Inc. is responsible for the marketing and sale of Nintendo's products, and the enforcement of Nintendo's intellectual property rights, in the United States.  Nintendo Co., Ltd. develops, and Nintendo of America Inc.

COMPLAINT - 10

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

markets and distributes, electronic video game consoles, games, and accessories.  Collectively, Nintendo of America Inc. and Nintendo Co., Ltd. are referred to herein as "Nintendo."

34.     Defendant Gary Bowser has worked with a network of developers; established a distribution chain of resellers, testers, and websites; and designed the marketing and content of other public-facing websites for Team Xecuter.  In addition to using the name Team Xecuter and acting as Team Xecuter on the Websites and otherwise, Defendant also operated as GaryOPA on other online news or blogging outlets promoting Team Xecuter products and services, recruiting testers of the service, and answering questions about the products.  Upon information and belief, day-to-day decisions regarding Team Xecuter's business were made by Defendant.

35.     Defendant, through the Websites and other channels of distribution, traffics in devices that circumvent the Nintendo Switch's Technological Measures and that facilitate infringement of numerous of Nintendo's copyrighted works on a massive national and international scale.

## FACTUAL BACKGROUND

36.     Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its video games, video game consoles, and video game characters.

37.     For decades, Nintendo has been a leading developer and producer of video games and video game consoles.  In 1983, Nintendo released the Family Computer in Japan and in 1985, released the Nintendo Entertainment System, or "NES," in the United States, which introduced millions of consumers to now-classic games like Super Mario Bros., The Legend of Zelda, and Donkey Kong.  The NES console also introduced millions of consumers to some of Nintendo's original and long-lasting characters, including Mario and Luigi, Yoshi, Link, Donkey Kong, and

COMPLAINT - 11

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Samus Aran.  Over the ensuing decades, Nintendo followed up the popularity of the NES console with the release of such groundbreaking home video game consoles as the Super Nintendo Entertainment System (or "SNES"), Nintendo 64 (or "N64"), Nintendo GameCube, Wii, Wii U, and the Nintendo Switch, and groundbreaking *handheld* video game consoles such as the Game Boy, Game Boy Color, Game Boy Advance, Nintendo DS, Nintendo 3DS, the Nintendo Switch, and recently, the Nintendo Switch Lite (a sister console of the Nintendo Switch dedicated to handheld play).  The Game Boy family of consoles in particular is one of the most popular video game consoles ever released, and introduced consumers to landmark games like Tetris, Kirby's Dream Land, and Pokémon.  Since 1983, Nintendo has sold more than 4.7 billion video games and more than 750 million hardware units globally.  Global sales of the Nintendo Switch alone have topped 79 million, and the top five Nintendo-developed copyrighted Switch games have sold over 20 million copies each, rising above 129 million global sales in total.

38.     Nintendo has built its company through substantial creative and financial investment in the development of new consoles, video games, products, technological security protections, intellectual property, and marketing.  Nintendo has garnered significant consumer awareness and goodwill through its commitment to developing and delivering innovative, fun, and memorable video game consoles and games.  Nintendo's video games are creative, audiovisual works with detailed stories, characters, and elements that are wholly original to Nintendo and protected by the Copyright Act.

39.     Nintendo has made substantial investments in the development, marketing, and promotion of its innovative products and services.  Nintendo and its authorized licensees create and publish many popular video games made specifically and exclusively for play on Nintendo's video game consoles.

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

40.     The popularity of Nintendo's video games and video game consoles has made Nintendo the target of intellectual property pirates who benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo's video games, or by creating (and selling) the means by which others can play pirated copies of Nintendo's video games on a Nintendo console.

41.     Nintendo has taken many steps and expended significant resources to halt the illegal copying, marketing, sale, and distribution of unauthorized copies of Nintendo's video games (or games made by other Nintendo-authorized licensees) designed to be played on Nintendo's video game consoles, and to halt the illegal trafficking in devices that allow users to play unauthorized copies of games on Nintendo's video game consoles.   Nintendo's efforts have included the implementation of technological protection measures in Nintendo's video game consoles that protect against unauthorized access to Nintendo and its licensees' copyrighted works, and that prevent the unauthorized play of pirated games on the consoles.

***The Nintendo Switch's Technological Measures Protect the Nintendo Switch Against Piracy***

42.     In March 2017, Nintendo released a new console called the Nintendo Switch, a home video game console that can also be played "on the go."   It quickly sold out in stores across the country and around the world, and, in the four years since, has become one of the best-selling video game consoles of all time, selling over 79 million units worldwide.

43.     In late 2019, Nintendo released a new version of the Nintendo Switch with better battery life, and the Nintendo Switch Lite, which runs the same games as the Nintendo Switch, but is smaller and can be played only as a handheld device.   As noted above, the Nintendo Switch and

COMPLAINT - 13

Nintendo Switch Lite video game consoles are referred to collectively herein as the "Nintendo Switch."

44.     The top five Nintendo-developed games released for the Nintendo Switch alone have sold more than 129 million copies as of December 2020, and individually each title has sold over 20 million copies.  These games, as well as others produced by Nintendo, are subject to valid, registered copyrights either owned or exclusively controlled by Nintendo.

45.     Like other Nintendo video game consoles, the Nintendo Switch contains numerous Technological Measures designed to prevent unauthorized access to the console and games, prevent bypassing or impairing Nintendo's copyrighted operating system, and prevent the unauthorized copying, playing, or sharing of games.

46.     For example, each Nintendo Switch contains an encrypted identifier, or "signature," that is checked when the console boots (*i.e.*, starts up).  The operating system itself also contains Technological Measures designed to ensure the operating system is authorized.  Only if the operating system Technological Measures and the encrypted system signatures are confirmed as authentic—thus proving the console and operating system are authorized by Nintendo—will the Nintendo Switch start up normally.

47.     The console's data as well as the game data—whether stored on the Nintendo Switch's built-in flash memory or on a removable flash memory card inserted into the console— are also encrypted with a key unique to each Nintendo Switch console.

48.     Moreover, when the Nintendo Switch attempts to connect with Nintendo's servers (which happens when a user attempts to play online, purchase games, or download updates), those servers will check the console's certificate.  Users are able to access Nintendo's online services only if this check is successful.  Nintendo also has the capability of banning specific consoles from

COMPLAINT - 14

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

accessing Nintendo servers (to do things like download new games or software updates) should its authentication measures detect unauthorized use.

49.     In addition to the Technological Measures related to the console and the operating system, the Nintendo Switch also contains Technological Measures that verify each *game* played on the Nintendo Switch (the "Game TPMs").  The Game TPMs employ encryption and signature checks similar to that of the Nintendo Switch's operating system described above.

50.     The Nintendo Switch allows users either to purchase physical cartridges with games on them that are inserted into the console, or to download digital games from Nintendo's own online store while using the Nintendo Switch.  Both formats are protected by encryption as well.

51.     Nintendo owns or exclusively controls numerous copyrights in software and games that are protected from unlawful access and copying by the operation of these Technological Measures.

52.     In their ordinary course of operation, the Technological Measures require the application of information and a process, with the authority of Nintendo, to gain access to Nintendo or its licensees' copyrighted works, and thus effectively control access to and copying of those works.

### Team Xecuter's Circumvention Devices and the SX OS

53.     On or about May 16, 2018, Team Xecuter publicly announced in an online post the group's creation of the SX OS, an unauthorized operating system that can be installed only on the Nintendo Switch; on information and belief, the post came directly from Defendant.  To run the SX OS on the Nintendo Switch, Team Xecuter offers Circumvention Devices that directly circumvent the Nintendo Switch's Technological Measures which control access to the console and to Nintendo and its licensees' copyrighted works.  Once it is running, the SX OS continues to

COMPLAINT - 15

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

circumvent Game TPMs, thereby allowing users to play pirated games for free, and otherwise operate and manipulate the console without Nintendo detecting the circumvention, harming Nintendo's business and decreasing revenue from Nintendo's copyrighted works.   Defendant began by trafficking in two Circumvention Devices to accompany the SX OS.

54.   <u>First</u>, Defendant provides and traffics within the United States the SX Pro, a small piece of hardware (or "dongle") that can be inserted into the Nintendo Switch.  The latest version of the SX OS software can be downloaded from one or more of the Websites onto a memory card and then, with the SX Pro inserted, booted on the Nintendo Switch.  With the SX Pro and memory card inserted upon startup—and after the user puts the device into "recovery mode"—the Nintendo Switch's Technological Measures are circumvented, and the Nintendo Switch is booted with the unauthorized operating system, SX OS.  After the SX Pro is inserted, the user activates the SX OS software by visiting Defendant's Websites or by connecting the Nintendo Switch to Defendant's servers.

55.   Defendant was a key figure in releasing the SX Pro.  In a blog post shortly before the release of the SX OS and SX Pro, Defendant stated "the first units [are] coming out of our assembly lines," and posted images of SX Pros being manufactured and packaged.

56.   <u>Second</u>, Defendant provides and traffics in SX Tools, which Team Xecuter promotes as the "easy way to install SX OS with an Android phone."  SX Tools is an Android application that users can download onto their mobile devices only from the Websites.  Once configured, users can plug their phones into the Nintendo Switch, which allows them to install the SX OS on the console.  The users follow the same activation method described immediately above through the Websites, thereby completing the digital hijacking of the Nintendo Switch.

COMPLAINT - 16

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

57.     <u>Third</u>, Defendant made available download links for the SX OS and SX Tools—along with other software described below—on at least one of the Websites.

58.     In June 2018, after experiencing the harm caused by Defendant's software and devices and by the users of these devices hacking into the Nintendo Switch to play and distribute pirated games, Nintendo released a technical update for the Nintendo Switch with updated hardware to prevent the console from being hacked by the SX Pro.  While neither the SX Pro nor SX Tools is capable of circumventing post-June 2018 Nintendo Switch consoles, there are approximately 20 million consoles that can still be hacked by the SX Pro and SX Tools.  And yet Defendant did not stop there.

59.     <u>Fourth</u>, in late 2019, under Defendant's leadership, Team Xecuter created two new Circumvention Devices, the SX Core and the SX Lite.  The SX Core is designed to hack *all* Nintendo Switch consoles, including the millions of post-June 2018 Nintendo Switch consoles not hackable by the SX Pro and SX Tools, as well as those already hackable by the SX Pro and SX Tools.  The SX Lite is designed to hack the Nintendo Switch Lite.  To use the SX Core or SX Lite—which are hardware chips or "modchips"—a user must essentially break open the casing of the Nintendo Switch and install a chip inside the casing by soldering it onto the authorized hardware.  Unlike the SX Pro, which is effectively plug-and-play, the SX Core and SX Lite chips are more difficult to install, and users risk causing significant damage and potentially rendering the console unusable.  Below are true and correct copies of images taken on April 17, 2020 from TEAM-XECUTER.COM, which depict the SX Core installed into a Nintendo Switch console.

**GORDON TILDEN THOMAS CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45





60.     The SX Core and the SX Lite, like the SX Pro, interfere with the normal operation of the Nintendo Switch to interrupt and bypass the Nintendo Switch's Technological Measures. Indeed, Defendant has boasted that these newer Circumvention Devices work on post-June 2018 Nintendo Switch consoles.  For example, on GBATemp, Defendant stated that the "SX Core is compatible with all [Nintendo] Switch regular models, whether they are . . . patched or un-patched"—in other words, whether they are pre- or post-June 2018—and that "SX Lite is for all [Nintendo] Switch Lite [consoles]."  On MAXCONSOLE.COM, Defendant touted the "extra treat" with a photo of SX Core inside the casing, saying "the wait is finally almost over."

61.     These modchips work on all 79 million-plus Nintendo Switch and Nintendo Switch Lite consoles currently in the market, including those previously un-hackable by Team Xecuter's SX Pro or SX Tools.

COMPLAINT - 18

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

***The Circumvention Devices Bypass the Nintendo Switch's Technological Measures***

62.     With one of the Circumvention Devices connected to the Nintendo Switch upon startup, the Nintendo Switch's Technological Measures are overridden and circumvented, and the Nintendo Switch is booted with the unauthorized operating system SX OS.

63.     <u>First</u>, after the user puts the Nintendo Switch into "recovery mode," the Circumvention Devices interfere with the normal operation of the Nintendo Switch to interrupt and bypass the Nintendo Switch's sequence of security checks.  The Circumvention Devices then force the Nintendo Switch to run Team Xecuter's code.

64.     <u>Second</u>, with unauthorized access to run code on the Nintendo Switch, the Circumvention Devices modify the Nintendo Switch's authorized operating system—in which Nintendo has ownership in and/or control of the copyright—to, among other things, retrieve the encryption keys necessary to access the encrypted data on the Nintendo Switch.

65.     <u>Third</u>, the Circumvention Devices load and run the SX OS, modifying the authorized Nintendo Switch operating system.  Because the SX OS at that point has full control of the console and can run additional unauthorized code, the SX OS allows for the circumvention of Nintendo's additional Game TPMs and infringement of Nintendo's copyrighted games as set forth below.

66.     The SX Pro, SX Tools, SX Core, and SX Lite each circumvent the Nintendo Switch's Technological Measures, because otherwise the unauthorized SX OS could not be run on the console.

***Team Xecuter's Unlawful Devices and Operating System Enable Unlawful Copying By the Circumvention of the Technological Measures, Including of the Game TPMs***

67.     In addition to the circumvention of the Technological Measures set forth above, the SX OS also circumvents certain Game TPMs, allowing users to copy, play, and further distribute

COMPLAINT - 19

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

unauthorized copies of Nintendo and its licensees' copyrighted video games, all without detection by Nintendo, as follows:

68.     At a basic level, users can simply find an illegal game file online—such as through a torrent site (a peer-to-peer file-sharing website), where one might also go for pirated movies or music—transfer it a microSD card for the Nintendo Switch, and then play the pirated game using the SX OS.

69.     Over time, Defendant has continued to direct the release of additional features that actively encourage and promote piracy on a massive scale.  Each use of these features—which allow users to make, use, share, or distribute unauthorized games—causes financial harm to Nintendo.

70.     First, on or around August 26, 2018, Team Xecuter, under Defendant's leadership, introduced a software feature called "Stealth Mode"—described on TEAM-XECUTER.COM as the "solution to prevent console bans."  This SX OS feature allows a user to go online without automatically connecting with Nintendo's servers and thereby avoid detection of the SX OS, which could trigger a console ban by Nintendo.  Apparently aware that the "Stealth" mode does not completely obscure an SX OS user from Nintendo, Team Xecuter's blog warned that Team Xecuter "can't guarantee Nintendo is not able to detect you are using SX OS" and so "playing online is at your own risk."

71.     Next came the "SX Installer," which, as described on TEAM-XECUTER.COM, allows a user to connect the Nintendo Switch to the user's "personal or favorite non-Nintendo content servers for games, updates, and [downloadable content]," and to "list and delete [game] tickets"—one of Nintendo's Game TPMs.  The SX Installer allows users to "list and launch" unauthorized copies of games from online servers (that, without the SX OS, would otherwise not

COMPLAINT - 20

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

be available except via lawful purchase through Nintendo's eShop or other authorized retailers). As Defendant posted to his website MAXCONSOLE.COM, under the name GaryOPA, the SX Installer also allows users to "upgrade or downgrade your Switch firmware with ease and safety, as simple as installing a [pirated] game on your Switch!"  Downgrading a device's firmware—*i.e.*, re-installing an old version of the firmware—is a common technique used by hackers to avoid security patches that companies like Nintendo push to their products during firmware updates. Immediately below is a true and correct copy of an image of the SX OS's Installer feature running—taken on January 8, 2021 from TEAM-XECUTER.COM—showing a gallery of installable pirated games:



72.     Another feature, the "SX Dumper," allows users to 'dump'—*i.e.*, unlawfully copy—the contents of an authentic Nintendo Switch game cartridge onto a memory card.

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

73.     In addition, Team Xecuter regularly released updates for various parts of the SX OS operating system and features.  For example, when version 1.2 of the "AutoLoader" feature was released—a feature that automatically loads digital pirated game files, fooling the console into thinking a game card is inserted—Defendant posted the announcement to Team Xecuter's Website TEAM-XECUTER.COM, to MAXCONSOLE.COM under the name "GaryOPA," and to the website GBATEMP.NET under the name "Gary Bowser (garyopa)."

74.     The Circumvention Devices and SX OS are each a technology, product, service, device, component, or part thereof that is capable of circumventing and in fact does circumvent both access and copy protections on the Nintendo Switch.

75.     Nintendo has never authorized Defendant, Team Xecuter, nor any of the users of the Circumvention Devices to use the SX OS or Circumvention Devices in connection with the Nintendo Switch, to circumvent the Nintendo Switch's Technological Measures, or to gain access to Nintendo's copyrighted works and/or copy those works in this unauthorized manner.

***Defendant Gary Bowser***

76.     Defendant has been at the center of Nintendo console piracy for years.

77.     Back in 2013, Defendant led the marketing and distribution of Gateway 3DS, a circumvention device that hacks the Nintendo 3DS console.  Defendant similarly oversaw the marketing and distribution of a circumvention device called Stargate in 2017, that essentially improved upon the Gateway 3DS and also hacked the Nintendo 3DS.  And in 2018—after the initial release of the SX Pro, discussed *supra*—Defendant led the marketing and distribution of the Classic2Magic, a device that hacks Nintendo's Super Nintendo Entertainment System Classic Edition.  On information and belief, the dedicated websites that promoted Gateway 3DS, Stargate, and Classic2Magic were controlled by Defendant.

COMPLAINT - 22

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

78.     And then of course there is Team Xecuter.  Defendant selected resellers who would carry the Team Xecuter products, and provided the Circumvention Devices and SX OS to those resellers for distribution.  These resellers also sold SX OS license codes, which could only be obtained by working in active concert with Defendant, constituting a "part" of a "service" that violates the DMCA.

79.     Moreover, upon information and belief, the Websites were largely under Defendant's control.  On information and belief, Defendant determined what content was posted, including the links to the illegal downloads of the SX OS.  Defendant ran the backend of the Websites as well, which included the infrastructure to remotely activate license codes for the SX OS.  Defendant was also the sole operator of the forums on the Websites; while there were other (unpaid) moderators, they were chosen by Defendant, reported to Defendant, and were subordinate to Defendant.  Further, after Defendant's arrest, no additional posts were ever made to TEAM-XECUTER.COM.

80.     On information and belief, Defendant directed shipments into the U.S. and into this District, including of the SX Pro, SX Core, and SX Lite.

81.     In addition, on or around February 11, 2020, Defendant posted to TEAM-XECUTER.COM searching for "testers" for the SX Core and SX Lite devices.  The post recited that Team Xecuter was "looking for 200 to 300 testers who are willing to commit time to really test in depth the [SX Core and SX Lite] product and report back to us eventual bugs, issues, or way [sic] to improve it before mass production starts."  On or around May 6, 2020—following "delay due to Coronavirus"—Defendant posted that "all samples of both SX Core & SX Lite" were being shipped.  Defendant included in this post several images showing dozens of SX Core and SX Lite devices in boxes ready for shipment.

**GORDON TILDEN THOMAS CORDELL** | 600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      82.     Team Xecuter attempted to generate hype around its recruitment of testers, posting

18  a video to YouTube accompanying the request for testers.

19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45



COMPLAINT - 24

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

83.     On information and belief, Defendant selected 'testers' and directed the shipment of 'samples' to those testers, including into the United States.

84.     In addition, on information and belief, Defendant selected and approved individuals who operated as resellers of these codes.

85.     In addition to serving as a leader of Team Xecuter and the Websites, and trafficking in the Circumvention Devices and the SX OS, Defendant operated MAXCONSOLE.COM, which served as a central resource for communications about the latest circumvention products and as a hub for the gaming community to discuss, find, and distribute Team Xecuter's products.  On information and belief, Defendant sent several emails in or around September and October 2018 soliciting paid advertisements for Team Xecuter's Websites, including from known resellers of Team Xecuter products.  Indeed, following the Indictment, media observed that Team Xecuter's activities were tracked in more or less real time by Defendant on MAXCONSOLE.COM.

86.     Defendant also used MAXCONSOLE.COM as a front for pirated content.  In 2018, Defendant boasted on the website that he was "busy setting up the 'underground' stuff (rompacks, coverarts, emulators) on maxconsole forums, that will also help on 'grey side' of the device for those wishing to play more than original [SNES] cartridges . . . ."  In other words, he was busy setting up a portion of his website hidden from public view, which would contain unauthorized— and thus infringing—copies of Nintendo's copyrighted works.

87.     Defendant also operated an account at GBATEMP.NET, where he posted information concerning Team Xecuter's products, including promoting the Circumvention Devices, under "GaryOPA."  Through the GBATemp account, Defendant posted about SX OS software updates and updates on the development of Circumvention Devices, as well as about some of the features circumventing the Game TPMs.  In marketing the release of the SX Core,

COMPLAINT - 25

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Defendant stated on GBATemp that he "spent the last 48 hours testing over 200 games" with the modchip.

88.     Defendant used a unique username at each of the above sites, as well as at Team Xecuter's support chat XECUTER.ROCKS.  Specifically, he operated under the screennames "Scene News" at TEAM-XECUTER.COM, "Xecuter" at XECUTER.ROCKS, "ub3r1337" at MAXCONSOLE.NET, and "GaryOPA" at GBATEMP.NET.  Defendant would regularly post all Team Xecuter announcements across the first three of those platforms, and would often also post the content to GBATEMP.NET.

89.     In short, Defendant has been robbing Nintendo of the value of its copyrighted works for years, including through profiting from trafficking in circumvention devices that hack Nintendo consoles, and through providing users with free pirated content such that the paid devices (including the Circumvention Devices here) look economical to the willing consumer.

### Defendant's Trafficking in the Unlawful Circumvention Devices

90.     Defendant traffics in the SX OS software and accompanying Circumvention Devices in violation of the Anti-Trafficking provisions of the DMCA through the Websites and other channels.  Defendant does so for commercial gain, and on information and belief has reaped significant income from sales of SX OS license keys and the Circumvention Devices.

91.     The TEAM-XECUTER.COM site provides general information about Team Xecuter, support forums for users, announcements regarding Team Xecuter's products, and information on where to buy those products.  The site also lists the black market sellers carrying the SX Pro, SX Core, and SX Lite, who Defendant terms "authorized resellers."

COMPLAINT - 26

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

92.     SX.XECUTER.COM provides download links for the SX OS, SX Tools, SX Dumper, and SX Installer, as well as user manuals for all the Circumvention Devices.  This site also contains the only browser-accessible place to activate the SX OS license.

93.     TEAM-XECUTER.ROCKS served as a secondary URL for the content at TEAM-XECUTER.COM, after the latter briefly went offline and "domain-hopped."

94.     XECUTER.ROCKS has served as the support forum and chat for Team Xecuter customers since 2020.  The website has served as a resource for those who subscribe to it and has hosted additional download links for the SX OS, SX Tools, SX Dumper, and SX Installer.

95.     In addition to trafficking in the SX OS and Circumvention Devices through the Websites, both these Websites prominently encourage people to contact Team Xecuter if they wish to become a "reseller" of the SX Core or SX Lite or to make a "wholesale enquiry."  Defendant has stated to journalists that the Circumvention Devices are "our products."  Defendant has released installation manuals for the SX Core and SX Lite, and has posted about specific mistakes users have made when installing the modchips.  The Websites also offer "full commercial and technical support, updates for life, and warranty on [Team Xecuter] product[s]."

96.     On information and belief, Defendant facilitates the shipment and provision of Circumvention Devices and SX OS license codes to resellers.

97.     Trafficking in the Circumvention Devices and SX OS are direct violations of Nintendo's rights under 17 U.S.C. §§ 1201 & 1203, regardless of whether a user ever uses the Circumvention Devices or runs the SX OS on the Nintendo Switch.

98.     The Circumvention Devices and accompanying SX OS are primarily designed and produced for the purpose of circumventing the Nintendo Switch's Technological Measures.

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

99.     The Circumvention Devices and accompanying software have only limited (if any) commercially significant purposes or uses other than to circumvent the Nintendo Switch's Technological Measures.

100.    Defendant markets the Circumvention Devices and accompanying software with knowledge that the Circumvention Devices and accompanying software are used to circumvent the Nintendo Switch's Technological Measures.

101.    While user infringement is not necessary to establish an anti-circumvention or anti-trafficking claim, on information and belief, the Circumvention Devices and SX OS are used primarily to play pirated video games and are facilitating massive copyright infringement of Nintendo and its licensees' copyrighted works.  Indeed, Defendant's own actions and words confirm this fact.  For example, Defendant has assisted in introducing several features into the SX OS—including "SX Dumper" and "SX Installer" described *supra*, ¶¶ 71−72—that exist only for the purpose of creating and sharing unlawful copies of Nintendo's copyrighted games.

### Defendant's Display of Nintendo's Protected Works

102.    Nintendo owns valid, registered copyrights in "Yoshi's Crafted World," "Mario Tennis Aces," and "Super Mario Odyssey," three video games created by Nintendo for the Nintendo Switch.[1]

103.    Nintendo has the exclusive right to display its copyrighted audiovisual works, *i.e.*, to post individual images nonsequentially.  *See* 17 U.S.C. § 106.

---

[1] *See Yoshi's Crafted World*, Copyright Reg. No. PA 2-197-776 (June 27, 2019); *Mario Tennis Aces*, Copyright Reg. No. PA 2-136-503 (Sept. 21, 2018); *Super Mario Odyssey*, Copyright Reg. No. PA 2-062-889 (Nov. 10, 2017).

COMPLAINT - 28

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

104.    On April 18, 2019, in connection with announcing version 2.0.0 of the SX OS

Dumper feature, described *supra*, ¶ 72, Defendant posted two screenshots of gameplay from

"Yoshi's Crafted World."



105.    In another post dated June 1, 2019, announcing version 2.0.4 of SX Dumper,

Defendant posted three screenshots of gameplay from "Mario Tennis Aces."

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22      106.    In yet another post dated October 6, 2019, announcing version 3.0.0 of SX Installer,

Defendant posted four screenshots of gameplay from "Super Mario Odyssey."



GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

107.    Without authorization, Defendant displayed individual images of Nintendo's copyrighted audiovisual works, in direct violation of Nintendo's exclusive display rights under the Copyright Act, 17 U.S.C. §§ 106(5), 501.  This display also shows that Defendant knew full well that the unlawful Circumvention Devices and the SX OS are used to play unauthorized copies of Nintendo and its licensees' copyrighted games, possible only through the circumvention of Nintendo's Technological Measures.

## COUNT ONE

### (Trafficking in Devices in Violation of 17 U.S.C. § 1201(a)(2))

108.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 107 as if fully set forth herein.

109.    Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), prohibits, in a general sense, the trafficking of devices that are primarily designed to circumvent technological protections that effectively control access to copyrighted works.  The statute provides, in pertinent part, that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act];

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act]."

COMPLAINT - 31

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

110.    As discussed *supra*, ¶¶ 42–52, the Nintendo Switch's Technological Measures effectively control access to works protected by the Copyright Act, including the copyrighted operating system of the Nintendo Switch as well as Nintendo's video games playable thereon.

111.    As also discussed *supra*, the Technological Measures require, in the ordinary course of their operation, the application of information, or a process or a treatment, with Nintendo's authority, to gain access to the Nintendo Switch console and any copyrighted games playable thereon.

112.    Through the Websites and other channels of distribution, Defendant offers to the public, provides, and otherwise traffics in the SX OS software, SX Tools, SX Installer, SX Server, SX Loader, SX Dumper, and any other software on the Websites or MAXCONSOLE.COM that circumvent the Technological Measures on the Nintendo Switch, in violation of 17 U.S.C. § 1201(a)(2).

113.    Defendant has also selected and approved resellers of SX OS license codes, who could only sell the codes by working in active concert with Defendant, constituting a "part" of a "service" as defined under 17 U.S.C. § 1201(a)(2).

114.    Upon information and belief, Defendant recruited hundreds of 'testers' for the SX Core and SX Lite, and was then responsible for shipping Circumvention Devices to the testers.

115.    Each such offering to the public, provision, or other act of trafficking in each such circumvention device and accompanying software constitutes a violation of 17 U.S.C. § 1201 for which Nintendo is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

116.    Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff.

COMPLAINT - 32

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

117.    As a direct and proximate result of Defendant's violations of 17 U.S.C. § 1201, Nintendo is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of offering to the public, provision, or otherwise trafficking in circumvention devices, or such other amounts as may be proper under 17 U.S.C. § 1201(c).  In the alternative, pursuant to 17 U.S.C. § 1201(c)(2), Nintendo is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

118.    Nintendo is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

119.    Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(1), Nintendo is entitled to permanent injunctive relief prohibiting Defendant from engaging in further acts of offering to the public, providing, or otherwise trafficking in the Circumvention Devices and accompanying software.

## COUNT TWO

### (Trafficking in Devices in Violation of 17 U.S.C. § 1201(b)(1))

120.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 119 as if fully set forth herein.

121.    Section 1201(b) of the DMCA, 17 U.S.C. § 1201(b), in a general sense, prohibits the trafficking in devices that are primarily designed to circumvent technological protection measures that protect against the unlawful copying of copyrighted works.  The statute provides, in pertinent part, that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

COMPLAINT - 33

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a portion thereof."

122.    As discussed above, the Nintendo Switch's Technological Measures effectively protect the rights of copyright owners in works protected by the Copyright Act.  These copyrighted works include the Nintendo Switch operating system and Nintendo's video games playable on the Nintendo Switch.

123.    As discussed above, Plaintiff's Technological Measures, in the ordinary course of their operation, prevent, restrict, or otherwise limit the exercise of a right of a copyright owner under the Copyright Act, by controlling or managing whether the Nintendo Switch user can *copy* Nintendo's copyrighted works, and whether the user may *play* unauthorized copies of Nintendo's copyrighted works on the Nintendo Switch.

124.    Through the Websites and other channels of distribution, Defendant offers to the public, provides, and otherwise traffics in the SX OS software, SX Installer, SX Tools, SX Server, SX Loader, SX Dumper, and any other software on the Websites or MAXCONSOLE.COM that

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

circumvent the Technological Measures on the Nintendo Switch, in violation of 17 U.S.C. § 1201(b)(1).

125.     Defendant has also selected and approved resellers of SX OS license codes, who could only sell the codes by working in active concert with Defendant, constituting a "part" of a "service" as defined under 17 U.S.C. § 1201(b)(1).

126.     On information and belief, Defendant recruited hundreds of 'testers' for the SX Core and SX Lite, and was then responsible for shipping Circumvention Devices to the testers.

127.     Each such offering to the public, provision, or other act of trafficking of a circumvention device or accompanying software constitutes a violation of 17 U.S.C. § 1201 for which Nintendo is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

128.     Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff.

129.     As a direct and proximate result of Defendant's violations of 17 U.S.C. § 1201, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of offering to the public, provision, or otherwise trafficking in the Circumvention Devices and software, or such other amounts as may be proper under 17 U.S.C. § 1201(c).  In the alternative, pursuant to 17 U.S.C. § 1203(c)(2), Nintendo is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

130.     Nintendo is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

131.     Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(1), Nintendo is entitled to permanent injunctive relief prohibiting Defendant from engaging in further acts of offering to the public, providing, or otherwise trafficking in circumvention devices and software.

## COUNT THREE

### (Display of Protected Works in Violation of 17 U.S.C. § 501(a))

132.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 131 as if fully set forth herein.

133.     Section 106 of the Copyright Act, 17 U.S.C. § 106, provides, in pertinent part, that the owner of a copyright under the Copyright Act has the exclusive right to display publicly individual images of an audiovisual work.

134.     Nintendo owns valid, registered copyrights in "Yoshi's Crafted World," "Mario Tennis Aces," and "Super Mario Odyssey," three video games created by Nintendo for the Nintendo Switch.

135.     Through posts on its website TEAM-XECUTER.COM, Defendant has unlawfully displayed nine different individual images of Nintendo's copyrighted works in violation of 17 U.S.C. § 501(a).

136.     Each such individual image constitutes a violation of 17 U.S.C. § 501(a) for which Nintendo is entitled to damages under 17 U.S.C. § 504 and injunctive relief under § 502.

137.     Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Nintendo.

COMPLAINT - 36

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

138.    As a direct and proximate result of Defendant's violations of 17 U.SC. § 501(a), Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c)(2), in the amount of $150,000 with respect to each copyrighted work, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, pursuant to 17 U.S.C. § 504(b), Nintendo is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

139.    Nintendo is entitled to its full costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

140.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Nintendo is entitled to preliminary and permanent injunctive relief prohibiting Defendant from engaging in further acts of displaying individual images of Nintendo's protected works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For a declaration that Defendant's activities as alleged herein constitute violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501.

2.    For such equitable relief under Titles 15, 17, and 28, and this Court's inherent equitable powers, as is necessary to prevent or restrain Defendant's further violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, including a permanent injunction prohibiting Defendant and his officers, agents, servants, employees, attorneys, and others in active concert or participation with any of them from: (a) offering to the public, providing, or otherwise trafficking in the Circumvention Devices, accompanying SX OS software, and any other circumvention devices or

COMPLAINT - 37

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

software that target Nintendo, Nintendo's consoles, or Nintendo's copyrighted works; (b) infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of, any of Nintendo's works protected by the Copyright Act, whether now in existence or hereafter created; (c) enjoining Defendant and all third parties with notice of the Order from supporting or facilitating access to any or all domain names, URLs, websites (including, without limitation, TEAM-XECUTER.COM, SX.XECUTER.COM, XECUTER.ROCKS, TEAM-XECUTER.ROCKS, and MAXCONSOLE.COM), chatrooms, and other social media websites or applications through which Defendant traffics in circumvention devices that threaten Plaintiff's Technological Measures or which infringe Plaintiff's rights under the Copyright Act; and (d) prohibiting Defendant from engaging in any other violation of the DMCA or the Copyright Act, or any other federal or state law, as respects Nintendo.

3.      For entry of an Order, pursuant to Sections 502 and 1203 of the Copyright Act (17 U.S.C. §§ 502, 1203), 28 U.S.C. § 1651(a), and this Court's inherent equitable powers, requiring Defendant and his officers, agents, servants, employees, attorneys, and others in active concert or participation with any of them: (a) to surrender and cease to use the domain names TEAM-XECUTER.COM, SX.XECUTER.COM, XECUTER.ROCKS, TEAM-XECUTER.ROCKS, MAXCONSOLE.COM, and any variant thereof controlled by Defendant; (b) to immediately transfer the domain names TEAM-XECUTER.COM, SX.XECUTER.COM, XECUTER.ROCKS, TEAM-XECUTER.ROCKS, MAXCONSOLE.COM, and any variant thereof controlled by Defendant, to Nintendo's control; and (c) enjoining Defendant and all third parties with notice of the Order from supporting or facilitating access to any or all domain names, URLs, and websites (including, without limitation, TEAM-XECUTER.COM, SX.XECUTER.COM,

**GORDON TILDEN THOMAS CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

XECUTER.ROCKS, TEAM-XECUTER.ROCKS, and MAXCONSOLE.COM) through which Defendant infringes Nintendo's copyrights.

4. An order pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1116 providing for the seizure, impoundment, and destruction of all Circumvention Devices, all copies of SX OS, and all other electronic material or physical devices within Defendant's custody, possession, or control—including any hard drives or other electronic storage devices containing such material—that violate Nintendo's rights under the DMCA or infringe upon copyrights owned or exclusively licensed by Nintendo.

5. For entry of an Order requiring Defendant, within thirty (30) days after service of the judgment with notice of entry thereof upon it, to file with the Court and serve upon Nintendo a written report under oath setting forth in detail the manner in which Defendant has complied with paragraphs 2, 3, and 4 of this Prayer for Relief, *supra*.

6. For an award of statutory damages pursuant to 17 U.S.C. §§ 504, 1203(c), in the amount of $2,500 per violation of 17 U.S.C. § 1201, arising from Defendant's willful violations of the anti-trafficking provisions of the DMCA, and $150,000 per violation of 17 U.S.C. §§ 106, 501, arising from Defendant's willful violations of Nintendo's exclusive rights under the Copyright Act. In the alternative, pursuant to 17 U.S.C. § 1203(c)(3)(B) and 17 U.S.C. § 504(b), Nintendo may elect to receive actual damages as well as Defendant's profits from their violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, in amounts to be proven at trial.

7. For an accounting, the imposition of a constructive trust, restitution of Defendant's unlawful proceeds from their violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, and damages according to proof.

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

8.      For Plaintiff's costs and reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b) and 17 U.S.C. § 505.

9.      For pre-judgment and post-judgment interest; and

10.     For such other relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury.

COMPLAINT - 40

**GORDON**
**TILDEN**
**THOMAS**
**CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

DATED this 16th day of April, 2021.

Respectfully submitted,

**GORDON TILDEN THOMAS &**
**CORDELL LLP**

 */s/ Michael Rosenberger*
Michael Rosenberger, WSBA #17730
One Union Square
600 University Street, Suite 2915
Seattle, WA 98101
Tel: (206) 467-6477
mrosenberger@gordontilden.com

**JENNER & BLOCK LLP**

 */s/ Alison I. Stein*
Alison I. Stein (*Pro Hac Vice* Pending)
Cayman C. Mitchell (*Pro Hac Vice* Pending)*
919 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699
astein@jenner.com
cmitchell@jenner.com

David R. Singer (*Pro Hac Vice* Pending)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel: (213) 239-5100
dsinger@jenner.com

*Attorneys for Plaintiff Nintendo of America Inc.*

*\*Admitted only in Massachusetts, not admitted*
*in New York.  Practicing under the supervision*
*of the Partnership of Jenner & Block LLP*

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477